725 F.2d 1511
 Timothy Charles PALMES, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Florida Dept. of Offender
Rehabilitation, Charles G. Strickland, Jr., Superintendent
of Fla. State Prison at Starke, Florida, and Jim Smith,
Attorney General of State of Florida, Respondents-Appellees.
 No. 83-3554.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 17, 1984.
 
 Thomas B. McCoun, III, St. Petersburg, Fla., for petitioner-appellant.
 Carolyn M. Snurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and HENDERSON, Circuit Judges, and BOYLE*, District Judge.
 FAY, Circuit Judge:
 
 
 1
 In 1977, a jury convicted the appellant, Timothy Charles Palmes, of first degree murder. The appellant waived his right to jury sentence recommendation. After a sentencing hearing, the Florida circuit judge sentenced him to death. The Florida Supreme Court affirmed the conviction and sentence, and the United States Supreme Court denied certiorari, Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).
 
 
 2
 On May 18, 1982 the Governor of Florida signed a death warrant for appellant's execution. On June 7, 1982 appellant initiated a federal habeas corpus petition in the United States District Court for the Middle District of Florida. The district court stayed appellant's execution and granted leave to amend the petition.[1] The petition was amended in August 1982. The district court stayed the proceedings and ordered appellant to exhaust state remedies on the new claims. Appellant then filed a motion to vacate in the state trial court which was denied in October, 1982. In January, 1983, the Florida Supreme Court affirmed the trial judge's denial of the motion. Palmes v. State, 425 So.2d 4 (Fla.1983).
 
 
 3
 In January, 1983, appellant filed a Second Amended Petition for a Writ of Habeas Corpus in the district court for the Middle District of Florida. The district judge denied the petition and this appeal was taken. We affirm the district judge's denial of relief.
 
 
 4
 Appellant raises eleven issues, but only seven are properly before this court. The remaining four issues are barred from review according to Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (See infra Part IV). The issues properly before this court are:
 
 
 5
 I. (a) Whether the admission into evidence of the appellant's statements and confessions violate his constitutional rights in that the statements were not voluntarily made; and
 
 
 6
 (b) Whether the admission into evidence of such statements denied the appellant a fair trial.
 
 
 7
 II. Whether appellant was denied the effective assistance of counsel when:
 
 
 8
 (a) First appointed counsel failed to render any legal assistance on behalf of the appellant at a critical stage of his case.
 
 
 9
 (b) Second appointed counsel failed to raise the issue concerning the appellant's illegal arrest.
 
 
 10
 (c) Second appointed counsel failed to object to the court's excusing for cause jurors expressing death penalty scruples.
 
 
 11
 (d) Counsel failed to object to comments touching upon appellant's fifth amendment rights.
 
 
 12
 III. Whether the trial judge's sentence of death is contrary to the eighth and fourteenth amendments.
 
 FACTS
 
 13
 In August or September 1976, the appellant and Ronald Straight offered to collect the victim's delinquent business accounts for him. The victim refused to employ the appellant, prompting the appellant to say, "You know, I am going to kill him."[2] On October 3, 1976 the appellant with his girlfriend, Jane Alpert, and Ronald Straight purchased lumber, hardware, and cement with which the appellant built a heavy box large enough to hold a man.
 
 
 14
 The next day the group implemented their murder plan. Jane Alpert lured the victim into an apartment where the appellant and Ronald Straight were waiting for him. The appellant and Straight hit the victim on the head three times with a blunt instrument and stabbed him fourteen times. The victim's body was placed in the box, cement was added and it was dumped in the St. John's River. The appellant, Straight, and Alpert fled, taking the victim's car, money, and personal effects with them. Appellant, Alpert, and Straight were apprehended in California. On October 14, 1976 Ms. Alpert was returned to Jacksonville, Florida. She was given immunity from prosecution in exchange for her testimony in the prosecution of the appellant and Ronald Straight.
 
 
 15
 Appellant was returned to Jacksonville on October 22, 1976. He was advised of his constitutional rights and then questioned by police. At appellant's first appearance on October 23rd a public defender was appointed to represent him. On October 24th appellant was again advised of his rights and further interrogated. He did not request counsel and answered the police questions. Appellant did, however, refuse to sign a written waiver of rights and refused to make any statement until he had spoken with Jane Alpert. After speaking with Alpert, appellant directed police officers to the place where the victim's body was thrown into the river.
 
 
 16
 On October 28th appellant was indicted for first degree murder. On October 29th he asked to speak with the police. He was again advised of his rights and specifically stated he did not want a lawyer. Appellant then signed a written waiver of rights and gave his confession. Also on October 29th the public defender's office requested and was granted permission to withdraw as appellant's counsel due to conflict. Between October 23rd and October 29th the public defender's office had no contact with appellant. He was never interviewed or advised by any attorney during this period.
 
 
 17
 The appellant's defense was largely his own testimony. He testified that Jane Alpert, acting alone, murdered the victim. His involvement was only to aid her after she had committed the murder.
 
 I. USE OF APPELLANT'S CONFESSION AT TRIAL
 
 18
 (a) Was the Confession Voluntarily Given?
 
 
 19
 Appellant asserts that the incriminating statements and confession were not voluntarily and freely made. This contention belies the facts adduced at the hearing on the Motion to Suppress. On October 22nd, upon arrival in Jacksonville, appellant was given his Miranda warnings and was briefly questioned. On October 24th at 2:40 p.m. questioning resumed after appellant was again informed of his rights. Appellant indicated then that he was willing to speak with the officers. The interrogation ended at 6:30 p.m., after appellant indicated he wished to talk to his girlfriend, Jane Alpert, before he would be willing to give a statement.
 
 
 20
 At 7:40 p.m. that evening police officers resumed the interrogation while attempting to contact the state attorney's office to obtain permission for Jane Alpert to telephone the appellant. Before this session, appellant was again informed of his constitutional rights and police officers questioned him "off and on" until midnight when Jane Alpert called. Appellant spoke to Alpert briefly and hung up after she told him she was getting her life in order and she was through with him. Appellant then said he would take the police to the location of the victim's body. At 12:30 a.m. on October 25th appellant was again informed of his constitutional rights before he led police officers to the site where the victim's body had been dumped into the St. John's River. After pointing out the location the appellant was driven back to jail. On the ride back to the county jail the appellant related some of the facts of the murder to police officers. At no time during the questioning between October 22nd and October 25th did the appellant state that he wanted an attorney or that he did not want to speak to the police officers. However, he did refuse to sign a written waiver of rights form.
 
 
 21
 After returning the appellant to jail in the early morning hours of October 25th, police personnel made no attempt to contact or further question him. On October 28th he was indicted for first degree murder. On October 29th appellant told jailhouse trustees that he wished to speak with police officers. The officers were not immediately contacted so appellant prevailed upon the jail chaplain to phone the police requesting that they meet with him.
 
 
 22
 At 4:00 p.m. on October 29th the police met with appellant. He indicated he wanted to make a statement. He was again informed of his rights and exhaustively questioned about whether he wanted an attorney. He said he did not, and signed a written waiver of rights form. It took an hour for appellant to relate his statement which was transcribed and notarized by a court reporter. During that hour appellant was again read his Miranda rights after he had taken a break to go to the bathroom.
 
 
 23
 The district court found that the uncontroverted testimony indicated that petitioner was mentally alert during all of these interrogations. The physical circumstances of the questioning were comfortable and the appellant was given food and water and allowed to use the bathroom. The physical circumstances and manner of interrogation do not suggest coercion.
 
 
 24
 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) established that incriminating statements made by a defendant during a custodial interrogation are admissible into evidence if adequate measures are taken to apprise the defendant of his privilege against self-incrimination. The defendant must "voluntarily, knowingly, and intelligently" waive his privilege. The voluntariness of appellant's confession is gauged by the totality of the circumstances. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).
 
 
 25
 The record is clear that the transcribed confession taken on October 29th was voluntary. Appellant initiated the interview, was exhaustively made aware of his rights,[3] and signed the written waiver form. Perhaps most indicative of the voluntariness is that for four days prior to October 29th police officers had not contacted appellant and that it was the appellant who initiated the contact. See Edwards v. Arizona, 451 U.S. at 483, 101 S.Ct. at 1884. At each level of review in the state and federal courts, it has been found that the appellant's statements were voluntary. The record fully supports this conclusion. On October 25th the appellant initially refused to discuss the crime until after he spoke with Ms. Alpert. Such action is a clear indication that he knew and understood his right to remain silent. After learning that Ms. Alpert had been given immunity from prosecution and had cooperated with the law enforcement representatives, Palmes willingly confessed all. The totality of the circumstances supports the finding that appellant's statements and confession were voluntarily given.
 
 
 26
 The district court found that the appellant had waived his right to counsel and we agree. Appellant was repeatedly informed of his right to counsel. There has been no suggestion that he did not understand. To the contrary, the record indicates that he fully understood his rights and chose to speak with police officers. The appellant attempts to counter the state's showing of waiver by suggesting that his initial refusal to sign a written waiver of rights form should be construed as an invocation of the right to counsel. If appellant did invoke the right to counsel interrogation would have to stop under Miranda. The record indicates that on October 24th the appellant said he would speak to police without counsel yet he refused to sign the waiver of rights form. On Friday October 29th, before appellant gave the crucial written statement, he did sign the waiver of rights form. This court is asked to turn this statement, "I will talk to you without counsel, but I won't sign a written waiver form," into "I want an attorney." We are unwilling to construe appellant's refusal to sign as a request for counsel.
 
 
 27
 In Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) the Court decided that a juvenile suspect's statement that he wanted to see his probation officer was not to be construed as a request to remain silent or for his attorney. The juvenile in Fare, after asking to speak with his probation officer, went on to speak freely with police and incriminate himself. The Court's rationale was its perception of the role of a lawyer as distinguished from a probation officer and the Miranda doctrine. The Court explained:
 
 
 28
 The fact that a relationship of trust and cooperation between a probation officer and a juvenile might exist, however, does not indicate that the probation officer is capable of rendering effective legal advice sufficient to protect the juvenile's rights during interrogation by the police, or of providing the other services rendered by a lawyer. To find otherwise would be "an extension of the Miranda requirements [that] would cut this Court's holding in that case completely loose from its own explicitly stated rationale." Beckwith v. United States, 425 U.S. 341, 345 [96 S.Ct. 1612, 1615, 48 L.Ed.2d 1] (1976). Such an extension would impose the burdens associated with the rule of Miranda on the juvenile justice system and the police without serving the interests that rule was designed simultaneously to protect. If it were otherwise, a juvenile's request for almost anyone he considered trustworthy enough to give him reliable advice would trigger the rigid rule of Miranda.
 
 
 29
 Id. 442 U.S. at 722-23, 99 S.Ct. at 2570-71.
 
 
 30
 The Court's concern with keeping Miranda true to its purpose leads us to decline to construe appellant's refusal to sign the waiver form as a request for counsel.
 
 
 31
 In North Carolina v. Butler, 441 U.S. 369, 373 n. 5, 99 S.Ct. 1755, 1758 n. 5, 60 L.Ed.2d 286 (1978), the Supreme Court noted that the then eleven United States Courts of Appeal had unanimously rejected the argument that refusal to sign a waiver form precludes a finding of waiver. Therefore, there is no independent significance to the appellant's refusal to sign the waiver form. The record demonstrates that appellant knew of and understood his right to have counsel present at the interrogations. We affirm the district court's finding that the appellant waived his right to counsel and voluntarily confessed.
 
 
 32
 (b) Did Allowing the Confession into Evidence Deny Appellant a Fundamentally Fair Trial?
 
 
 33
 Appellant argues that he was denied a fair trial for two reasons. First, the trial judge did not find the confession voluntary prior to allowing it into evidence. Second, the judge erred in not allowing appellant to testify before the jury about his state of mind when he gave the confession. We easily dispose of the first part of this argument. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), requires a trial judge to determine the voluntariness of a confession before it is admitted into evidence. In Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967) the Court explained that "[a]lthough the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." In this case the trial judge conducted a hearing according to Jackson v. Denno. During the hearing counsel argued and offered evidence on the question of voluntariness. The judge denied the motion to suppress. Although her order simply denied the motion without specifically enunciating that the confession was found voluntary, inherent in the denial of the motion is a finding of voluntariness. The record in this case is "unmistakably clear" and we find no reason to require state trial judges to articulate all the reasons why a motion to suppress is denied.
 
 
 34
 The second portion of this issue, whether refusing to allow the appellant to testify before the jury about the circumstances of his confession is reversible error, is more difficult to resolve. The trial judge did rule that the appellant could not testify about his state of mind when he gave the confession.[4] Nonetheless, appellant was allowed to testify that his motive for confessing was to protect Jane Alpert. (Ex.Vol. IX at 810-818). Even though the trial judge determines admissibility of a confession it is up to the jury to decide the weight it will give the confession. Trial testimony about the circumstances and voluntariness of the confession would have aided the jury in deciding what weight to accord appellant's confession.
 
 
 35
 The Florida Supreme Court found that under Florida law the trial judge erred in refusing to allow the appellant to testify about the circumstances of the confession. Palmes v. State, 397 So.2d at 653-56. Precedent in this circuit agrees with the Florida Supreme Court's decision. Calloway v. Wainwright, 409 F.2d 59, 65 (5th Cir.), cert. denied, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969). Appellant has phrased this issue as one of constitutional fairness dimensions, however, the basic error is an evidentiary question properly resolved by reference to Florida law.[5] We agree with the Florida Supreme Court's conclusion that under Florida law it was error to exclude this testimony. See State v. Oyarzo, 274 So.2d 519 (Fla.1973); Graham v. State, 91 So.2d 662 (Fla.1956); Bates v. State, 78 Fla. 672, 84 So. 373 (1919).
 
 
 36
 The Florida Supreme Court and the United States district court both went beyond the initial finding of error to conclude, based on all the evidence at trial, that this error was harmless.[6] We therefore must determine if this error is harmless or so substantial as to deny the appellant a fair trial. The doctrine of harmless error allows affirmance of criminal convictions if the non-constitutional error did not substantially influence the verdict and there was sufficient evidence to support the verdict apart from the error. Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S.Ct. 1239, 1247-48, 90 L.Ed. 1557 (1946); United States v. Martinez, 700 F.2d 1358, 1367 (11th Cir.1983); United States v. Phillips, 664 F.2d 971, 1027 & n. 84 (5th Cir.1981) (Unit B).
 
 
 37
 In analyzing whether this error was harmless, the Florida Supreme Court noted that although the trial judge improperly sustained the state objection, the appellant in fact did testify to the circumstances of his directing the police to the body and the series of conversations with police officers during the week of October 22, 1976.[7] Thus the scope of the trial judge's ruling limiting testimony about the circumstances was narrow. Substantial testimony about the circumstances was allowed. The jury had a good impression of appellant's state of mind at the time he confessed.
 
 
 38
 The trial judge had already determined the confession was voluntary. The erroneously excluded testimony would have only gone to the weight the jury should give the confession, for the confession was properly admitted into evidence. The district court and the Florida Supreme Court found substantial other evidence aside from the statement upon which appellant could have been convicted. Based on all the other evidence introduced and the fact that appellant was allowed to testify to some of the circumstances of the confession, we find that the trial judge's error was harmless.
 
 II. EFFECTIVENESS OF COUNSEL
 
 39
 The appellant asserts he was denied effective assistance of counsel in four ways:
 
 
 40
 a) During the week of October 22nd-29th the public defender's office, although appointed as appellant's counsel, never contacted him in any way and ultimately withdrew as counsel on October 29th due to conflict. Because of this, appellant argues that the confessions made during that week should have been suppressed.
 
 
 41
 b) Trial counsel failed to argue that appellant's confession should have been suppressed due to an illegal arrest.
 
 
 42
 c) Trial counsel failed to object to the court's excusal for cause of venirepersons expressing death penalty scruples in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
 
 
 43
 d) Trial counsel failed to object to the prosecutor's comments that touched upon appellant's fifth amendment rights.
 
 
 44
 The sixth amendment promises criminal defendants the effective assistance of counsel. The standard for effectiveness is one of reasonableness: counsel must have rendered reasonably effective assistance given the totality of the circumstances. King v. Strickland, 714 F.2d 1481, 1485 (11th Cir.1983); Goodwin v. Balkcom, 684 F.2d 794, 804 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). The appellant must carry the burden of proof that counsel was ineffective and that actual prejudice resulted. Washington v. Strickland, 693 F.2d 1243, 1262 (5th Cir.1982) (Unit B, en banc), cert. granted, --- U.S. ----, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). Whether appellant has been denied the effective assistance of counsel is a mixed question of law and fact. Cuyler v. Sullivan, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 1714-15, 64 L.Ed.2d 333 (1980); Washington v. Watkins, 655 F.2d 1346, 1354 (5th Cir.1981). To decide this issue we must examine the totality of the circumstances and the entire record. Goodwin v. Balkcom, 684 F.2d 794, 804 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).
 
 
 45
 a) The Week of October 22nd--29th
 
 
 46
 Appellant's argument on this issue has two discrete components: first, was appellant denied the effective assistance of counsel during the police interrogations and second, was the public defender's failure to contact the appellant during this crucial week a violation of appellant's sixth amendment right.
 
 
 47
 Appellant submits that he had a sixth amendment right to have counsel informed of and present at the police interrogations because the criminal process had shifted from investigation to accusation. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In United States v. Brown, 569 F.2d 236 (5th Cir.1978) (en banc )[8] the court found such an interpretation of Massiah to be too broad and refused to extend the sixth amendment right to counsel beyond instances of surreptitious or secret interrogation as in Massiah. 569 F.2d at 238. Here, like Brown, the appellant knew he was being interrogated, was repeatedly advised of his rights, and chose not to request counsel. The extraordinary rule in Massiah does not apply when the police are forthright in their interrogation. When appellant knew he was being questioned by the police and understood the consequences of his speech it was up to him to act in some manner to invoke his right to counsel. We have already concluded that the appellant waived his right to counsel during that week. Appellant was not denied the effective assistance of counsel during the police interrogations because he never invoked and voluntarily waived his right to counsel.
 
 
 48
 Appellant also contends he was denied effective assistance of counsel during the week of October 22, 1976 because the public defender who was appointed to represent him on October 22nd never undertook that task. No one from the public defender's office ever contacted the appellant. On October 29th, one day after appellant's indictment, the public defender withdrew from appellant's case due to conflict. The Supreme Court of Florida found that "the formal appointment of the Public Defender at first appearance did not initiate legal representation since nothing was done toward actually providing legal counsel." Palmes v. State, 397 So.2d at 652. Since no representation was undertaken, it could not have been ineffective. The district court ruled that the appellant waived his right to counsel so that there could be no issue of effectiveness.
 
 
 49
 From appellant's standpoint it is lamentable that the Public Defender could not represent him. We acknowledge that the events during the first week after appellant's return to Florida were crucial to the state's case. If counsel had been able to represent appellant perhaps the inculpatory statements would have never been made.[9] We must, however, determine if the public defender's inaction violates the right to effective assistance of counsel. We find that the district court's conclusion, that because appellant waived his right to counsel there could be no question of effectiveness, embodies the wrong rationale. Waiver of counsel for a specific interrogation does not waive effectiveness of counsel in other instances. Here appellant claims counsel should have interviewed him during that week and advised him about his statements to police which is unrelated to the presence or absence of counsel during the custodial interrogations.
 
 
 50
 The Florida Supreme Court reached the same result as the district court by concluding that the public defender never undertook to represent the appellant. This is supported by the record. Because of a conflict the public defender could not and did not represent the appellant. It is probable that had the public defender undertaken to give even the most preliminary advice to the appellant, this court would have to decide whether appellant was denied effective assistance of counsel during this period due to the conflict. The public defender had no choice but to withdraw from appellant's case. There are no allegations that the public defender was dilatory in seeking the court's permission to withdraw and the appointment of other counsel.
 
 
 51
 We agree with the Florida Supreme Court that there could be no ineffective assistance of counsel because the public defender never undertook to represent the appellant. Had the appellant at any point during this five day period asked to see an attorney perhaps new counsel could have been appointed sooner. Appellant also suggests that the police should have inquired as to who was representing the appellant and had the attorney present before any interrogation or waiver occurred. We have already concluded that the sixth amendment right explained in Massiah does not extend that far. In conclusion, none of the sixth amendment doctrines that appellant relies on allow a finding of ineffective assistance of counsel during the week of October 22nd-29th.
 
 
 52
 b) Failure to Argue Suppression Due to Illegal Arrest
 
 
 53
 Appellant contends that he was denied the effective assistance of counsel because his trial counsel failed to argue that the confession should be suppressed as the fruit of an illegal arrest. The appellant contends the arrest was illegal because there was no probable cause. Trial counsel did argue forcefully that the confession should be suppressed because it was not voluntarily made. The district court ruled that trial counsel made an informed decision, based on his professional expertise, to not pursue the illegal arrest basis for suppression. Alternatively, the district court found the argument meritless because so much time lapsed between the appellant's arrest and the confessions that the taint, if any, had dissipated.
 
 
 54
 In this circuit "a strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.1983), citing, Westbrook v. Zant, 704 F.2d 1487, 1500 (11th Cir.1983). Trial counsel testified at the state hearing on this issue that he did not argue the confession was the product of an illegal arrest because he thought appellant was arrested for grand theft and that, in any event, a gun battle occurred prior to the arrest which alone would have constituted probable cause. Ex.Vol. XVII at 53-54. Appellant argues that if the federal district court had allowed an evidentiary hearing it would have been shown that appellant was in fact arrested in California for the Florida murder one day before the warrant for grand theft issued and that trial counsel's professional opinion was based on inadequate investigation.
 
 
 55
 Trial counsel traveled to California to depose all the people involved in the California arrest. Certainly such a trip was sufficient investigation to meet the effectiveness of counsel standard. See Washington v. Strickland, 693 F.2d at 1255 n. 21. Further, this was at least trial counsel's tenth murder defense. A motion to suppress was made but for other, perhaps more persuasive, reasons. We cannot say that trial counsel's decision was "so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d at 1445, citing, Washington v. Strickland, 693 F.2d at 1254.
 
 
 56
 c) Failure to Object to Excusal for Cause
 
 
 57
 Appellant asserts that trial counsel was ineffective because he failed to object to the court's dismissal of four venirepersons for death penalty scruples in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[10] The record shows that trial counsel agreed to collective examination of prospective jurors and that the trial judge adequately explained the requirements of Witherspoon to the prospective jurors.[11] Trial counsel's failure to assert a Witherspoon violation could have been the product of a reasonable conclusion that no violation had occurred. Given the totality of the voir dire, it is clear that counsel was "reasonably effective" even though he did not raise a Witherspoon violation.
 
 
 58
 d) Failure to Raise Fifth Amendment Violation
 
 
 59
 Appellant's final claim of ineffective assistance of counsel stems from trial counsel's failure to object to statements by the prosecutor that allegedly infringed upon appellant's fifth amendment right to remain silent. Appellant points to two statements that he contends violate his fifth amendment privilege. The first occurred during defense counsel's cross-examination of a state witness.
 
 
 60
 Q: What did she tell you about if Mr. Stone was coming back?
 
 
 61
 PROSECUTOR: Excuse me, Your Honor. I'm not sure what day we are referring to.
 
 
 62
 DEFENSE COUNSEL: I'm talking about October 4th.
 
 
 63
 PROSECUTOR: I object, Your Honor.
 
 
 64
 It's beyond the scope of direct examination.
 
 
 65
 DEFENSE COUNSEL: Your Honor, I think that he has testified he was working there on that date and it's extremely relevant what occurred on that date.
 
 
 66
 PROSECUTOR: He didn't. He didn't testify he worked there on direct examination on October 4th.
 
 
 67
 I only--direct examination dealt only with September 25th.
 
 
 68
 The Prosecutor can call him as his own witness if he wishes.
 
 
 69
 The second statement occurred at the conclusion of the testimony of a key state witness, Pat Miles.
 
 
 70
 THE COURT: All right, gentlemen.
 
 
 71
 PROSECUTOR: Nothing further.
 
 
 72
 THE COURT: Any further questions by the State?
 
 
 73
 PROSECUTOR: Nothing further, Your Honor.
 
 
 74
 DEFENSE COUNSEL: Nothing further from the defense, Your Honor.
 
 
 75
 THE COURT: All right.
 
 
 76
 Do you anticipate needing this witness for further testimony, Mr. Greene?
 
 
 77
 PROSECUTOR: It's possible, Your Honor, the State may need him in rebuttal.
 
 
 78
 THE COURT: Sargeant Miles, you are going to be excused. However, remain available in the event you are needed for recall. (R.Vol. II at 333).
 
 
 79
 Only a very keen trial attorney could have perceived that these statements might infringe upon the appellant's fifth amendment privilege by elliptical reference to the appellant's future testimony. Appellant's brief cites no authority that supports the substantive fifth amendment claim. Quite frankly, it is difficult for the court to see any merit in the contention. Appellant chose to testify in his own defense, therefore, his fifth amendment privilege was probably waived. Trial counsel certainly cannot be deemed to have been ineffective for failing to raise this tenuous objection.
 
 
 80
 Attorneys have many legal tools to use in their discretion to properly defend a person. The sixth amendment right to effective assistance of counsel does not require counsel to raise every objection without regard to its merits. The sixth amendment standard is one of reasonable effectiveness. We find that appellant's trial counsel was not ineffective.
 
 
 81
 III. IS APPELLANT'S SENTENCE OF DEATH CONTRARY TO THE EIGHTH AND FOURTEENTH AMENDMENTS
 
 
 82
 Appellant argues that the sentencing procedure used in his case and the Florida Statute's aggravating factor of "heinous, atrocious, and cruel" conduct are unconstitutional. Fla.Stat. Sec. 921.141(5)(h) (1975). Appellant waived the jury for the penalty phase of his trial and was sentenced to death after a hearing before the trial judge. At the sentencing hearing appellant's attorney attacked perceived inaccuracies and bias in the presentence investigation that was presented to the court and called six character witnesses to testify about the appellant. Appellant's counsel argued statutory and non-statutory mitigating factors and pointed out the disparity in treatment between the appellant and Jane Alpert, who was granted full immunity from prosecution. A psychiatric report that discussed the possible effect of drugs on appellant's behavior was also introduced. At the conclusion of the hearing the trial judge read a prepared sentence of death.
 
 
 83
 Appellant does not assert any flaw in the sentencing procedure. He does not contend that there was a systemic bias or prejudice or even that this trial judge was biased. His argument is that the trial judge did not render a reasoned decision based on the evidence presented during the sentencing hearing. In support of this contention, appellant points out that the sentence was meted out immediately following the conclusion of the sentencing hearing. Appellant offers no evidence of this contention and probably could not produce any. The nature of this assertion is inherently unreviewable. We cannot review the thinking of a trial judge for such would be pure conjecture. We may only examine the procedure and the written order. None of the numerous cases appellant cites to this court would have otherwise. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).
 
 
 84
 Appellant contends that the trial judge erred in not considering non-statutory mitigating factors that were presented during the sentencing hearing. In her judgment and order of death the trial judge discusses only the statutory aggravating and mitigating factors in Fla.Stat. Sec. 921.141. Again we cannot conclude that because the order discusses only the statutorily mandated factors that the other evidence in mitigation was not considered. Appellant's citation to Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), in which the Court held that a trial judge may not as a matter of law refuse to consider evidence of mitigation, is not persuasive. Here the trial judge patiently heard all of the evidence appellant had to offer. The weight the trial judge gave to any one factor was wholly within her discretion. See Barclay v. Florida, --- U.S. ----, 103 S.Ct. 3418, 3430 n. 2, 77 L.Ed.2d 1134 (1983) (Stevens and Powell, JJ. concurring). Our review is completed once it is established that a full hearing was conducted in which appellant's counsel was given an opportunity to present all of the mitigation evidence. There is no indication whatsoever that the trial judge did not conscientiously consider everything presented.
 
 
 85
 Appellant also contends that the statutory aggravating factor of "heinous, atrocious, and cruel" conduct is unconstitutionally vague in its application."[12] This contention was rejected in Proffitt v. Florida, 428 U.S. at 255-56, 96 S.Ct. at 2968 (Stewart, Powell and Stevens, JJ.). See also, Barclay v. Florida, --- U.S. ----, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). We find that the trial judge properly applied this factor. We conclude based on the record that the trial judge met the constitutional sentencing standard of an "individualized determination on the basis of the character of the individual and the circumstances of the crime." 103 S.Ct. at 3428.
 
 
 86
 Finally, appellant claims that his sentence violates the eighth and fourteenth amendments because it is so disproportionate to the grant of immunity to Jane Alpert. Ronald Straight, another actor in this murder scheme was also sentenced to death. The Supreme Court has stated that discretionary decisions of state prosecutors to grant immunity to some participants of a crime and not others is not arbitrary or cruel and unusual under the constitution. See Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (Justices Stewart, Powell, and Stevens); Proffitt v. Florida, 428 U.S. at 254, 96 S.Ct. at 2967. Appellant's claim that Jane Alpert was not similarly punished is not a cognizable basis for relief.
 
 
 87
 IV. ISSUES BARRED FROM REVIEW DUE TO PROCEDURAL DEFAULT
 
 
 88
 Appellant raises four additional substantive issues:
 
 
 89
 (1) Whether appellant's statements and confession were the product of an illegal arrest and detention;
 
 
 90
 (2) Whether prospective jurors were improperly excused for cause because of conscientious concerns about the death penalty in violation of Witherspoon v. Illinois;
 
 
 91
 (3) Whether the prosecutor improperly commented upon the appellant's fifth amendment right to remain silent; and
 
 
 92
 (4) Whether the appellant was denied a fair trial by the conduct of certain jurors who allegedly formed and expressed opinions concerning guilt before hearing all of the evidence.
 
 
 93
 All of these issues have been addressed as bases for the ineffective assistance of counsel claim, however, the standard of review is different if we must review these issues on their substantive merits. These issues were raised initially in the first amended habeas corpus petition in the district court. Pursuant to the district court's order to exhaust state remedies these issues were raised in the Florida courts in the Motion to Vacate. The Florida Supreme Court ruled that, under Florida law, all four of these issues should have been raised on direct appeal and could not be raised in a collateral proceeding. Palmes v. State, 425 So.2d 4 (Fla.1983). The district court then found that these issues were barred from habeas corpus review under Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and Ford v. Strickland, 696 F.2d 804 (11th Cir.1983) (en banc).
 
 
 94
 The rule of Wainwright v. Sykes prohibits a federal court from entertaining a constitutional claim in a habeas corpus petition if that claim is barred by the state law due to a procedural default. The rule furthers comity and helps assure that the state trial is the primary adjudication and not just a prelude to a federal adjudication. In this case, these issues are barred due to default under Florida law. Relief may be had from the rule only upon a showing of "cause and prejudice." In this circuit "cause" to excuse a procedural default must be avoidance of "a miscarriage of justice," and prejudice is "actual prejudice." Ford v. Strickland, 696 F.2d at 817.
 
 
 95
 Appellant attempts to show cause for the failure to argue that his arrest was illegal by asserting that trial counsel's failure to raise this issue was the result of ignorance of the facts and in no way was a deliberate attempt to bypass the state procedure. Appellant urges the court to define "cause" as any reason other than a strategic decision to forego state adjudication of the claim, citing, Huffman v. Wainwright, 651 F.2d 347, 351 (5th Cir.1981) (Unit B). Such a broad standard of "cause" would vitiate the rule of Wainwright v. Sykes and disregard its purposes of comity, of providing federal courts a state court adjudication of constitutional issues, and encouraging state courts to enforce procedural rules strictly. Huffman did not so read the "cause" factor and we too reject this interpretation.
 
 
 96
 The district court found little probability that the arrest was illegal. It further noted that because so much time lapsed between appellant's arrest and the confessions, the taint, if any, had dissipated. We found that the failure to raise this issue at trial was not ineffective assistance of counsel. In determining whether sufficient "cause" exists to meet the manifest injustice standard, our purpose is not to reach the merits of the very issue barred by procedural default. We find no ignorance by counsel which yielded a manifest injustice, therefore, the illegality of appellant's arrest is barred from review.
 
 
 97
 Appellant attempts to show cause for trial counsel's failure to object to the manner of jury selection by asserting that (1) such an objection would have been futile due to the policy of the Fourth Judicial Circuit of Florida that excludes every juror expressing death penalty scruples and (2) counsel believed the trial judge's actions were proper and didn't want to make a dubious objection that would emphasize the death sentence potential to the jurors. These assertions do not meet the "cause" criterion. In Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) the Supreme Court noted that "the futility of presenting an objection to the state courts cannot alone constitute cause for failure to object at trial." Id. at 130, 102 S.Ct. at 1572. The second part of appellant's case for cause here suggests a strategic decision not to raise this issue. Issues not raised for strategic reasons are certainly barred by the rule in Wainwright v. Sykes.
 
 
 98
 Appellant moved for a mistrial after learning of the juror's discussion of the evidence. The trial judge denied the motion and this issue was not raised on direct appeal. The Florida Supreme Court ruled it was barred from collateral review. Appellant's only assertion of cause is the same as that argued in the first issue, namely, that since the decision not to appeal this issue was not a tactical choice to avoid the state courts the federal courts should hear this issue. For the already enunciated reasons we reject this argument and hold this issue barred under Wainwright v. Sykes.
 
 
 99
 Finally, appellant argues that the right to remain silent free from adverse comment is such a fundamental right that its exalted constitutional stature alone should be sufficient "cause" for relief from the Sykes rule. In Engles v. Isaac, supra, the Court acknowledged that "[w]hile the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing." 456 U.S. at 129, 102 S.Ct. at 1572. Because appellant has made no showing of cause we hold that this issue too is barred. We do not examine the prejudice, if any, that resulted from the failure to raise these issues because the Sykes standard for relief from its rule is in the conjunctive. Having failed to show "cause," appellant necessarily fails the conjunctive.
 
 
 100
 For all of the foregoing reasons the decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable Edward J. Boyle, Sr., U.S. District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 In September 1980, the appellant joined other death row inmates in challenging the Florida Supreme Court's review of certain materials outside the record. Relief was denied. Brown v. Wainwright, 392 So.2d 1327 (Fla.1981)
 In June 1982 the appellant's execution was stayed by the district court pending resolution of the Brown issue by this court. This court found no constitutional error in the Florida Supreme Court's practice. Ford v. Strickland, 696 F.2d 804 (11th Cir.1983) (en banc ).
 
 
 [2]
 These facts are gleaned from Circuit Judge Beverly's findings of fact made pursuant to Fla.Stat. 921.141(3) (1975)
 
 
 [3]
 The following excerpt from the transcript indicates that just prior to confessing on October 29th appellant understood his Miranda rights and chose to freely and voluntarily confess:
 You have the following rights under the United States Constitution:
 You do not have to make a statement or to say anything.
 Anything you say can be used against you in court.
 You have the right to talk to a lawyer for advice before you make a statement or before any questions are asked of you.
 You have the right to have the lawyer with you during any questioning.
 If you cannot hire--afford to hire a lawyer, one will be appointed for you before any questioning, if you wish.
 If you decide to answer questions now without a lawyer present you still have the right to stop answering at any time.
 You may also stop the questioning at any time and consult with your appointed or privately employed lawyer.
 Tim, going back to the middle portion of your rights, do you understand that you have the right to talk to a lawyer?
 Yes, I do.
 Do you want to talk to a lawyer?
 No, I don't believe there is any need.
 Do you realize that you can have a lawyer with you during this statement or during any questioning if you so desire?
 I understand that.
 Would you like for us to call an attorney for you?
 No.
 Would you like for us to call the Public Defender's Office?
 No.
 Would you like for us to call the judge?
 No, I'm ready to make a statement on my own. I believe my own mind in this thing is enough.
 I understand what a lawyer would advise me, especially if he is planning on trying to defend me.
 I plan to plead guilty in the case, anyway.
 So, I think I'm going to go ahead and make a statement and get it off of my mind now.
 Okay.
 Do you further understand that anytime during the statement you can still stop us and we will still contact a lawyer for you?
 I understand.
 Okay.
 Do you have any questions regarding your rights?
 No, I don't.
 Okay.
 Suppression Hearing at 29-30.
 
 
 [4]
 When defense counsel attempted to elicit testimony of voluntariness during direct examination of the appellant the state objected. A recess was ordered during which the state argued that because the issue of voluntariness had been decided at the suppression hearing and because the appellant chose not to testify at that hearing, he should not be allowed to testify at trial on this issue. The judge sustained the state's objection, thus limiting appellant's testimony. Ex.Vol. IX at 816
 
 
 [5]
 It is proper to look to Florida law here because the appellant was charged and tried by the State. Had this been a federal trial a statutory right to testify at trial about voluntariness of a confession would have existed. See 18 U.S.C. 3501(c) (1980)
 
 
 [6]
 The district judge cited federal cases that support a finding that an evidentiary ruling such as this is harmless. See United States v. Grose, 525 F.2d 1115, 1119 (7th Cir.1975), cert. denied, 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976); United States v. Howard, 483 F.2d 229, 230 (5th Cir.), cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973); United States v. Curry, 471 F.2d 419, 421 (5th Cir.), cert. denied, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973)
 
 
 [7]
 The opinion of the Florida Supreme Court reprints the relevant portion of the transcript on this issue. Palmes v. State, 397 So.2d at 654-55
 
 
 [8]
 Brown is binding precedent on this panel. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc )
 
 
 [9]
 Appellant argues that counsel should have been present to advise the appellant to not speak with police. In brief, appellant urges that "Any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances." quoting Escobedo v. Illinois, 378 U.S. 478, 488, 84 S.Ct. 1758, 1763, 12 L.Ed.2d 977 (1964). We agree with the statement, however, the prophylatic rules of Miranda and Massiah have yet to be extended to such a degree that criminal defendants are presumed to lack the rational facilities of choice. Appellant chose not to have counsel present during the interrogation. Many might wonder why anyone being questioned would make statements incriminating themselves in criminal activity. The response is that "confession is good for the soul." Some suggest that remorse motivates such confessions. These are among the very few issues courts need not decide. Regardless of why, the appellant made what has been found to be an informed voluntary choice
 
 
 [10]
 The substantive Witherspoon issue is barred because it was not raised on direct appeal or in the state habeas proceedings. See infra Sec. IV
 
 
 [11]
 The following is the trial judge's explanation of the Witherspoon doctrine:
 The Court will now explain to you the standard by which a qualification to serve as a jury is to be measured. The Court will then ask you to search your own conscience and to tell the Court whether measured by that standard you feel that you are qualified to serve as a juror. The fact that you may have reservations about, or conscious or religious scruples against capital punishment, does not disqualify you to serve as a juror. It is entirely possible that a juror who believes that capital punishment should never be inflicted, and who is irrevocably committed to its abolition, could nevertheless subordinate his personal views to what he perceives to be his duty to abide by his oath as a juror and to obey the law of the State. If you are willing to consider rendering a verdict that might result in the death penalty and are not irrevocably committed, before the trial begins, to vote against a verdict that may result in the penalty of death, regardless of the facts and circumstances that might emerge in the course of the proceedings, you are qualified to serve as a juror. However, if you would automatically vote against a verdict that might result in the penalty of death without regard to any evidence that might be developed at trial, or if your attitude toward the penalty of death would prevent you from making an impartial decision as to the defendant's guilt, then you are not qualified to serve as a juror.
 Please examine your own conscience and tell the Court whether measured by that standard you feel that you are qualified to serve as a juror.
 In summary, if after searching your conscience you would automatically vote against a verdict of guilty despite the facts and circumstances merely because it could result in the penalty of death, then you would not be qualified to serve as a juror. On the other hand, if your attitude towards the death penalty would prevent you from making an impartial decision, an impartial decision as to the defendant's guilt, I would now like for you to raise your hands. Does anybody sitting in the jury box feel that despite any facts and circumstances which may be proved that you would automatically vote against a verdict if you were convinced that the defendant is guilty; you would automatically vote against a verdict which could result in the penalty of death?
 Tr.T.Vol. III at 37-40.
 We find that this was an adequate statement.
 
 
 [12]
 On this statutory aggravating factor the trial judge found:
 The evidence showed that a premeditated design to effect the death of the victim commenced well in advance of its execution. The defendant with accomplices, schemed for a minimum of two weeks preparing to take the victim's money, murder him, and dispose of his body. The preliminaries included construction of a sturdy casket by the defendant, the involvement of a six year old child in the crime by keeping her home from school on the appointed day and instructing her to answer the door when the victim knocked and invite him into the residence where he was killed, and scheduling the crime around the first of the month when cash collections from the victim's business would be greatest.
 The chief medical examiner for the Fourth Judicial Circuit testified that there were fourteen (14) stab wounds on the victim's chest and shoulder area, six (6) of which penetrated into the body cavity perforating the lungs and each of these six (6) was potentially fatal. He further testified that the victim's hands and feet were tied by a single link of wire, that the head showed three injuries which were caused by a blunt instrument, that the back of the victim's right hand showed another four stab wounds, and there had been partial amputation of the index finger. In the medical examiner's opinion, the victim was tied and bound with wire before he was stabbed.
 During the pre-death tortures, the victim begged to be freed and offered money to the defendant. The method by which the victim was murdered reflects a strong determination to kill. This murder was committed in a cold, cruel, atrocious and heinous manner.
 ORDER OF JUDGMENT AND SENTENCE, June 22, 1977.