Billy Joe MAGWOOD,
Petitioner-Appellant,
Cross-Appellee,

v.

Fred SMITH, Commissioner, Alabama
Department of Corrections; Willie E.
Johnson, Warden, Holman Unit, Re-
spondents-Appellees, Cross-Appellants.

No 85–7270.

United States Court of Appeals,
Eleventh Circuit.

June 4, 1986.

J.L. Chestnut, Turner & Williams, Robert H. Turner, Selma, Ala., for petitioner-appellant, cross-appellee.

Ed Carnes, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees, cross-appellants.

Before VANCE and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

Billy Joe Magwood, an Alabama state prisoner under sentence of death, petitioned the United States District Court for the Middle District of Alabama for a writ of habeas corpus, alleging nine grounds for relief. The district court rejected eight of the alleged errors, but granted the writ because the state trial judge erroneously rejected two mitigating circumstances during the sentencing phase of trial. We affirm.

The facts of this case are straightforward and uncontested.[1] On January 3, 1979, Billy Joe Magwood, a black male, was released from the Coffee County, Alabama jail where he had been serving a sentence for drug possession. Prior to his release, Magwood on several occasions had expressed an intense desire to retaliate against Coffee County Sheriff Neil Grantham for perceived injustices during his incarceration. On the morning of March 1, 1979, Magwood returned to the jail and shot Sheriff Grantham as the sheriff entered the building. This shooting was witnessed by Deputy Sheriff Thomas Weeks, who recognized Magwood from his prior imprisonment. Magwood was arrested later that day and charged with capital murder.

Magwood's court-appointed counsel requested the Circuit Court of Coffee County to investigate Magwood's competency to stand trial. Pursuant to Ala.Code § 15–16–20,[2] the court ordered two local physicians, Dr. Donald Crook and Dr. Bancroft Cooper, to examine Magwood. The doctors conducted their examinations on June 6, 1979, and both found that Magwood was presently sane. Despite this report, the court ordered Magwood committed to Alabama's Searcy Hospital for further tests by a three-member lunacy commission pursuant to Ala.Code § 15–16–22. On August 16, 1979, the lunacy commission reported that Magwood suffered from paranoid schizophrenia, was presently insane and probably was insane at the time of the murder. The court then ordered Magwood to remain at Searcy Hospital for treatment until his competency was restored.

In April of 1980, Magwood was declared competent and was returned to Coffee County for trial. On June 26, 1980, Magwood's counsel moved the court for public funds to retain a consulting psychiatrist, but the court denied the request. On April 15, 1981, the State of Alabama moved for a re-examination of Magwood's mental condition due to the passage of time since the last examination at Searcy Hospital. Magwood's counsel acquiesced to the motion and the court ordered Dr. Douglas McKeown, a clinical psychologist, to examine Magwood. Dr. McKeown expressed his belief that although Magwood suffered from paranoid schizophrenia, he knew the difference between right and wrong on the day of the murder.

1. The complete factual and procedural history of this case is reported in the opinions of the district court, *Magwood v. Smith,* 608 F.Supp. 218, 219–20 (M.D.Ala.1985), and the Alabama Court of Criminal Appeals, *Magwood v. State,* 426 So.2d 918, 920–23 (Ala.Crim.App.1982), *aff'd,* 426 So.2d 929 (Ala.), *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983).

2. Section 15–16–20 provides:
   If any person other than a minor in confinement, under indictment, for want of bail for good behavior, for keeping the peace or appearing as a witness, in consequence of any summary conviction appears to be insane, the judge of the circuit court of the county where he is confined must institute a careful investigation, call a respectable physician and call other credible witnesses; and, if he deems it necessary, he may call a jury, for which purpose he is empowered to compel attendance of witnesses and jurors. If it is satisfactorily proved that the person is insane, the judge may discharge him from imprisonment and order his safe custody and removal to the Alabama state hospitals, where he must remain until restored to his right mind, and then, if the judge shall have so directed, the superintendent must inform the judge and sheriff, whereupon the person must be remanded to jail and criminal proceedings be resumed, or he must be otherwise discharged.

Magwood was tried in June of 1981 in the Circuit Court for Coffee County. His principal defense was insanity. To establish insanity, Magwood relied on the report of the lunacy commission and the deposition testimony of Dr. William Rudder, a psychiatrist and member of the commission. In rebuttal, the State offered the testimony of Drs. Crook, Cooper and McKeown. The jury convicted Magwood of capital murder and recommended a death sentence.[3] At the sentencing hearing, the court found one circumstance supporting the death penalty: murder of an on-duty police officer.[4] It also found two mitigating factors: Magwood's age at the time of the murder (27) and his lack of significant prior criminal history.[5] The court specifically considered and rejected two proposed mitigating circumstances relating to Magwood's allegedly diminished mental condition at the time of the murder. Based on this evaluation, the court sentenced Magwood to death. This conviction and sentence were upheld on direct appeal, *Magwood v. State*, 426 So.2d 918 (Ala.Crim. App.1982), *aff'd*, 426 So.2d 929 (Ala.), *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983), and in state writ of error coram nobis proceedings, *Magwood v. State*, 449 So.2d 1267 (Ala.Crim.App.), *late appeal denied*, 453 So.2d 1349 (Ala.1984).

On July 20, 1983, Magwood petitioned the United States District Court for the

Middle District of Alabama for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. The district court ordered a psychiatric evaluation of Magwood on July 13, 1984, which showed Magwood to be sane. Since Magwood did not request an evidentiary hearing, the district court then addressed the merits of Magwood's petition based on the briefs and record of the case. The court rejected Magwood's challenge to the guilt phase of his trial. The court, however, held that the state trial court committed clear error when it rejected the two proposed mitigating factors concerning Magwood's allegedly diminished mental condition at the time of the crime. Accordingly, the district court "remanded" the case to the Circuit Court of Coffee County for resentencing in light of these two now-established mitigating factors. *Magwood v. Smith*, 608 F.Supp. 218 (M.D.Ala.1985). Magwood appeals the denial of habeas corpus relief on eight of the grounds alleged and the State of Alabama cross-appeals the grant of the writ on the remaining ground. We will address each allegation of error in turn.

## I. *Magwood's Appeal*

Magwood first contends that he was denied his sixth amendment right to counsel when Dr. Cooper and Dr. Crook examined him, without notice to counsel, pursuant to a court order and later testified at

---

**3.** Magwood's trial was conducted in two phases. During the first phase, the jury determined his guilt of a capital offense. The court then conducted a sentencing hearing in the presence of the jury at which the parties offered evidence of aggravating and mitigating circumstances. It was after this hearing that the jury recommended the death sentence. The actual sentence, however, was determined by the trial judge after an additional hearing based on his own analysis of the aggravating and mitigating circumstances. *See* Ala.Code §§ 13–11–3, 13– 11–4; *Beck v. State*, 396 So.2d 645 (Ala.1980).

The particular death penalty statute at issue in this case, Ala.Code § 13–11–1 *et seq.*, was repealed in 1981. It remains effective, however, for crimes committed while it was in force. *See* 1981 Ala.Acts ch. 178, § 20.

**4.** Ala.Code § 13–11–2(a)(5) permits the imposition of the death penalty for "[t]he murder of

any police officer, sheriff, deputy, state trooper or peace officer of any kind, or prison or jail guard while such prison or jail guard is on duty or because of some official or job-related act or performance of such officer or guard."

**5.** Ala.Code § 13–11–7 provides in relevant part:
Mitigating circumstances shall be the following:
(1) The defendant has no significant history of prior criminal activity;
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;

. . . . .

(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and
(7) The age of the defendant at the time of the crime.

the trial to rebut Magwood's insanity defense. The source of this argument is *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), in which the Supreme Court of the United States held that an accused who had not raised the issue of his mental competency possesses fifth amendment and sixth amendment rights during a court-ordered psychiatric examination if testimony by the examining psychiatrist is offered against the accused at trial. *See also Cape v. Francis*, 741 F.2d 1287, 1292–97 (11th Cir.1984), *cert. denied*, — U.S. ——, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985); *Booker v. Wainwright*, 703 F.2d 1251, 1256–59 (11th Cir.), *cert. denied*, 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983); *Spivey v. Zant*, 661 F.2d 464, 473–76 (5th Cir.Unit B 1981),[6] *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Battie v. Estelle*, 655 F.2d 692, 699–703 (5th Cir.1981).[7]

Based on the relevant case law, we find no violation of Magwood's sixth amendment rights.[8] A review of the chronology of events surrounding the examination establishes this point. In an undated motion filed sometime in May, 1979, Magwood's counsel asked the trial court "to institute an investigation as to the sanity of said Defendant under the provisions of Title 15–16–20, Code of Alabama 1975." Record on Appeal, Exhibit A, Vol. II, p. 381. The court granted this motion on May 31, 1979. In its order, the court set June 19, 1979, as the date for a hearing to determine Magwood's competency and, pursuant to § 15–16–20, ordered Dr. Cooper and Dr. Crook to examine Magwood in the interim and to testify at the hearing concerning the re-

sults of their examination. Record on Appeal, Exhibit A, Vol. II, p. 382. The physicians examined Magwood six days later on June 6, 1979, and both testified at the June 19, 1979, hearing.

Magwood's counsel requested the examination and were aware of the time frame in which it would take place. As such, they had enough notice of the examination and ample opportunity to advise their client. This situation stands in marked contrast to *Estelle v. Smith*, in which counsel had no notice of the examination. *See Estelle v. Smith*, 451 U.S. at 458–59, 101 S.Ct. at 1871, 68 L.Ed.2d at 366.

Moreover, Magwood cannot claim surprise at the use of the physicians' testimony. The Alabama trial court ordered the June 6, 1979, examination to determine Magwood's competency to stand trial. Both physicians limited their psychiatric testimony to this issue. Neither expressed an opinion about Magwood's sanity at the time of Sheriff Grantham's murder. This again varies from the facts in *Estelle v. Smith*, in which the psychiatrist examined Smith to determine his competency to stand trial, but testified about Smith's future dangerousness. *See Estelle v. Smith*, 451 U.S. at 470–71, 101 S.Ct. at 1877, 68 L.Ed.2d at 374. *See also Cape v. Francis*, 741 F.2d 1287, 1297 (11th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985) (resolution of *Estelle v. Smith* sixth amendment claim "turns upon the actual *use* of the testimony at trial").

As a last resort, Magwood requests this court to instigate a heightened inquiry because the testimony of mental competency

---

**6.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit Court of Appeals.

**7.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

**8.** The State of Alabama apparently concedes that Magwood's sixth amendment rights had

attached at the time of the examination and that the physicians' testimony was used at a critical stage of the proceedings against Magwood. *See Spivey v. Zant*, 661 F.2d 464, 476 (5th Cir.Unit B 1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Magwood does not raise a fifth amendment claim, apparently because his right against self-incrimination was waived when he placed his sanity in issue. *See Booker v. Wainwright*, 703 F.2d 1251, 1257 (11th Cir.), *cert. denied*, 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983).

came not from a psychiatrist, but from two local physicians. Although this distinction might influence the physicians' credibility as experts, it has no effect on our analysis of Magwood's rights. Magwood's counsel had sufficient notice of the examination and were not surprised by the use of testimony derived from that examination. There was no sixth amendment violation in this instance.

■ Magwood next complains that he was denied effective assistance of counsel when the state trial court denied his request for public funds to hire a consulting psychiatrist. In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court noted the importance of a psychiatrist's assistance in establishing an insanity defense and held that a state has an obligation under the Constitution to provide an indigent defendant with "access to a competent psychiatrist" if the defendant's "sanity at the time of the offense is to be a significant factor at trial." 470 U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66. *See also Martin v. Wainwright*, 770 F.2d 918, 933–35 (11th Cir. 1985); *Bowden v. Kemp*, 767 F.2d 761 (11th Cir.1985); *Blake v. Kemp*, 758 F.2d 523, 529–33 (11th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985).

It was clear almost from the time of Magwood's arrest that his sanity was likely to be "a significant factor at trial." We find, however, that Magwood was provided sufficient psychiatric assistance to satisfy the requirements of *Ake*.[9] Six doctors conducted psychiatric examinations of Magwood before his trial. The three members of the state lunacy commission concluded that Magwood was insane at the time of their examination and probably was insane at the time of the crime. This conclusion was admitted in evidence through the commission's report and through Dr. Rudder's deposition testimony. Dr. McKeown also testified about Magwood's mental condition at the time of the crime. Although he believed that Magwood suffered from paranoid schizophrenia on March 1, 1979, he concluded that Magwood knew the difference between right and wrong. Thus, four experts gave opinions concerning Magwood's mental condition on the date of the crime and three experts gave evidence highly favorable to Magwood's insanity defense. In contrast, the defendant in *Ake v. Oklahoma* was examined by several psychiatrists to determine his competency to stand trial, but none of these experts testified about his mental condition at the time of the crime. As such, there was no expert testimony supporting or contradicting Ake's insanity defense. *See Ake*, 470 U.S. at ——, 105 S.Ct. at 1091, 84 L.Ed.2d at 59.

Magwood clearly was provided with "access to a competent psychiatrist" and, as such, was able to present a viable insanity defense. Although additional psychiatric testimony might have been desirable, it was not required under the Constitution. As the Supreme Court noted in *Ake*, an indigent defendant has no "constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed...." 470 U.S. at ——, 105 S.Ct. 1097, 84 L.Ed.2d at 66. *See also Martin v. Wainwright*, 770 F.2d 918, 934–35 (11th Cir.1985); *Finney v. Zant*, 709 F.2d 643, 645 (11th Cir.1983).

■ In his third allegation of error, Magwood charges that Alabama imposes the death penalty in a racially discriminatory manner. In support of this argument, he cites statistics that a majority of pre-*Furman* executions in Alabama involved blacks and that a majority of 1983 death row inmates were black. Magwood did not request an evidentiary hearing on this issue in the district court.

**9.** Prior to the decision in *Ake*, this court and its predecessor recognized an accused's constitutional right to psychiatric assistance under appropriate circumstances. *See Finney v. Zant*, 709 F.2d 643 (11th Cir.1983); *Beavers v. Balkcom*, 636 F.2d 114 (5th Cir.Unit B 1981); *United States v. Edwards*, 488 F.2d 1154 (5th Cir.1974); *McCollum v. Bush*, 344 F.2d 672 (5th Cir.1965). As such, we need not address the State's contention that *Ake* does not have retroactive effect.

Although we doubt that these statistics establish discriminatory application of the death penalty in Alabama,[10] we need not resolve this claim because it is procedurally barred by Alabama law. A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless he can overcome this impediment by showing cause for and actual prejudice from the default. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Alabama has contemporaneous objection rules that preclude appellate review of issues that could have been raised at trial, *Wood v. State,* 416 So.2d 794 (Ala.Crim.App.1982), *Moore v. State,* 415 So.2d 1210 (Ala.Crim.App.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982), *Fagan v. State,* 412 So.2d 1282 (Ala.Crim.App.1982), and coram nobis review of issues that could have been raised on direct appeal, *Dobard v. State,* 455 So.2d 281 (Ala.Crim.App.1984), *Magwood v. State,* 449 So.2d 1267 (Ala.Crim. App.), *late appeal denied,* 453 So.2d 1349 (Ala.1984).

Since Magwood could have asserted the discriminatory application issue in state court and failed to do so, he is thereby barred from pursuing it in federal court. Moreover, Magwood made no effort to establish the necessary "cause" and "actual prejudice" to overcome this procedural bar. Consequently, we must reject this allegation of error.

■ Magwood's fourth claim also is precluded by procedural default. Magwood contends that the state trial judge should have questioned the jury venire with respect to possible racial prejudice, even though Magwood's counsel made no request for such an inquiry. Magwood did not pursue this issue during the trial and cannot now raise the issue in further state proceedings. Absent a showing of cause and actual prejudice, he cannot seek review in a federal forum. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Since Magwood has not demonstrated cause and actual prejudice, the district court properly found that he is now estopped from asserting this claim.[11]

Magwood's charge of ineffective assistance of counsel was presented to the state coram nobis court and, as such, is ripe for federal habeas corpus resolution. Magwood alleges five errors of trial counsel, which he contends deprived him of adequate representation. These claimed errors are:

(a) failure to object to the testimony of Dr. Crook and Dr. Cooper;

(b) failure to inquire of the jury venire about possible racial prejudice;

(c) failure to obtain a bench warrant for Dr. Rudder of the lunacy commission;

(d) failure to subpoena the other two members of the lunacy commission;

(e) failure to conduct a full investigation of the insanity defense.

For the performance of an attorney to rise to the level of a constitutional violation, it must be established that (1) the conduct of trial counsel was unreasonable under the circumstances and (2) a reasonable probability exists that the trial results would have been different but for the unreasonable conduct. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cron-*

---

**10.** In *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) (en banc) and *Ross v. Kemp,* 756 F.2d 1483 (11th Cir.1985) (en banc), this court held that proof of disparate impact generally is insufficient to invalidate a death penalty statute. The district court relied on this authority to resolve this issue against Magwood on the merits, despite the possible procedural bar. *Magwood v. Smith,* 608 F.Supp. 218, 221 (M.D.Ala. 1985).

**11.** We have strong doubts about the merits of this alleged error. Although a criminal defendant has a constitutional right to question a jury venire on possible racial prejudice under limited circumstances, *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), we are aware of no authority that requires a trial judge to conduct such questioning *sua sponte.*

*ic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Boykins v. Wainwright,* 737 F.2d 1539 (11th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). Applying this standard to the conduct of counsel in this case, we find no constitutional violation.

The failure to object to the testimony of Dr. Crook and Dr. Cooper is not grounds for relief because, as we have already noted, such an objection would have had no legal basis.

■ Counsel did not question the jury on possible racial prejudice because of their desire to keep race out of the trial. Magwood's trial attorneys testified at the coram nobis hearing that they based this decision on their experience as trial lawyers in Coffee County and their knowledge of local racial attitudes. Record on Appeal, Exhibit P, Vol. I, pp. 72–73, 80–81, 84–85. We agree that this was a reasonable strategy under the circumstances and one best left to the sound discretion of trial counsel. *Cf. Moore v. Maggio,* 740 F.2d 308, 317–18 (5th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

■ The record discloses that Magwood's trial lawyers secured a subpoena for Dr. Rudder of the lunacy commission, but that Dr. Rudder did not appear at trial. The trial court was uncertain whether Dr. Rudder actually had been served with the subpoena. His deposition was then read to the jury in lieu of oral testimony. Magwood now contends that counsel should have obtained a bench warrant for Dr. Rudder.

Magwood, however, has failed to demonstrate a reasonable probability that live testimony would have changed the trial results in this particular case. Although live testimony might have had a greater impact than a deposition, Dr. Rudder's deposition was highly favorable to Magwood since it concluded that Magwood was probably insane on the date of the crime. As the district court noted, this deposition "was as favorable to petitioner as could be hoped for from any trial testimony." *Magwood v. Smith,* 608 F.Supp. at 223.

A similar analysis applies to counsel's failure to subpoena the other two lunacy commission members. Their findings were presented to the jury in the commission's report and in the testimony of Dr. Rudder. As such, Magwood has failed to demonstrate a reasonable probability that their testimony would have affected the outcome of the trial.

■ After a thorough review of the record, we also find that counsel conducted an extensive investigation of Magwood's sanity. Counsel deposed various experts, reviewed a variety of documents, including Magwood's files from the Veterans Administration and the state mental hospital, and interviewed Magwood's relatives. The lawyers elected not to use all of this information during the trial, but this was a strategic decision based on the potentially harmful effect of part of that evidence. *See* Record on Appeal, Exhibit P, Vol. I, pp. 69–70, 74–79.

These alleged errors, taken separately or together, do not amount to a constitutional denial of effective assistance of counsel. Most involved matters of trial strategy and none affected the result of the trial.

Magwood next challenges the constitutionality of Ala.Code § 15–16–23. This statute requires the trial court to suspend the execution of a person under sentence of death if "it is made to appear to the satisfaction of the trial court that the convict is then insane." [12] The basis of this argu-

---

12. Section 15–16–23 provides in full:

If after conviction and sentence to death, but at any time before the execution of the sentence, it is made to appear to the satisfaction of the trial court that the convict is then insane, such trial court shall forthwith enter an order in the trial court suspending the execution of the sentence to the time fixed in the order; and, if it subsequently is made to appear to the court that such convict, the execution of the sentence of whom has thus been suspended, is restored to sanity, the trial court shall forthwith have another order entered ordering and commanding the execution of the judgment and sentence originally awarded in said court at a time fixed in such

ment is that the statute leaves the determination of sanity to the trial judge's unbridled discretion. Magwood maintains that a petitioner "simply is not placed on notice by the statute as to what evidence is needed to satisfy the statute's requirement."

The district court did not address the merits of this issue because it found that Magwood lacked standing to challenge the statute. When the issue of Magwood's sanity was raised in the district court, the court ordered Magwood examined by the psychiatric staff of the Taylor Hardin Secure Mental Facility in accordance with the standards for present insanity set forth in *Gray v. Lucas*, 710 F.2d 1048 (5th Cir.), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983).[13] Since this evaluation showed Magwood to be presently sane, the district court simply declined to reach the merits of this argument and held that Magwood lacked standing to challenge § 15–16–23. *Magwood v. Smith*, 608 F.Supp. at 224.

■ The fact that Magwood is presently sane for purposes of this federal litigation does not necessarily preclude a finding that he is insane as a matter of Alabama state law under § 15–16–23. Consequently, Magwood did have standing and we address the merits of this argument.

■ We begin our analysis with the principle of statutory construction that "if a statute can be made constitutionally definite by a reasonable construction the court is under a duty to give it such a construction." *United States v. Thomas*, 567 F.2d 299, 300 (5th Cir.1978). Although § 15–16–23 itself does not specify how the trial court should determine the present sanity of a death-row inmate and the Alabama

appellate courts have not yet definitively construed the statute,[14] there is ample guidance in Alabama common law. In determining whether an accused is competent to stand trial, Alabama courts must determine whether the accused has "sufficient present ability to consult with an attorney with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of the proceeding against him." *Atwell v. State*, 354 So.2d 30, 35 (Ala.Crim.App.1977), *cert. denied*, 354 So.2d 39 (Ala.1978). *See also Holland v. State*, 376 So.2d 796 (Ala.Crim. App.), *cert. denied*, 376 So.2d 802 (Ala. 1979). *Cf. Gray v. Lucas*, 710 F.2d 1048, 1054 (5th Cir.), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *Jones v. Smith*, 599 F.Supp. 1292 (S.D.Ala. 1984), *aff'd*, 772 F.2d 668 (11th Cir.1985).

We are aware of the distinction between an inquiry into an accused's competency to stand trial and a death row inmate's sanity at the time of execution. The two situations, however, are sufficiently analogous that the standards used to determine competency should provide any necessary instruction for § 15–16–23 purposes. Moreover, the trial court actually employed a similar standard when it rejected Magwood's § 15–16–23 motion. The court held that "Magwood's attempt to invoke Section 15–16–23 and obtain a stay of execution of the sentence of death is without merit. The totality of the evidence conclusively shows he is not presently insane. He appears sane, competent and capable of assisting counsel in matters pertaining to the writ of error, sentence or otherwise." Record on Appeal, Exhibit P, Vol. I, p. 180. Accordingly, we hold that § 15–16–23 is

---

order. This mode of suspending the execution of sentence after conviction on account of the insanity of the convict shall be exclusive and final and shall not be reviewed or revised by or renewed before any other court or judge. No court or judge in this state shall have the power or right to suspend the execution of sentence of any other court of record on account of the insanity of the convict. This section shall not prevent the judge or court from impaneling a jury to try the ques-

tion of insanity or from examining such witnesses as he may deem proper for guidance.

**13.** The parties stipulated to the application of the *Gray v. Lucas* factors for the purposes of this case.

**14.** A trial court's decision to suspend an execution pursuant to § 15–16–23 is not subject to appellate review. *See Magwood v. State*, 449 So.2d 1267, 1268 (Ala.Crim.App.), *late appeal denied*, 453 So.2d 1349 (Ala.1984).

constitutional. *Cf. Solesbee v. Balkcom,* 339 U.S. 9, 70 S.Ct. 457, 94 L.Ed. 604 (1950); *Ford v. Wainwright,* 752 F.2d 526 (11th Cir.) (per curiam), *cert. granted,* — U.S. ——, 106 S.Ct. 566, 88 L.Ed.2d 552 (1985); *Goode v. Wainwright,* 731 F.2d 1482 (11th Cir.1984) (per curiam).

■ Magwood also attacks the district court's finding that he is presently sane. The district court made the finding of present sanity pursuant to the stipulated factors set out in *Gray v. Lucas,* 710 F.2d 1048 (5th Cir.), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983) and the psychiatric evaluation prepared by the staff of the Taylor Hardin Secure Mental Facility. Magwood offered no new evidence of present insanity. This factual and legal basis provides more than adequate support for the district court's finding.

■ Finally, Magwood accuses the state prosecutor of prosecutorial misconduct by making a judgmental statement to the jury during his sentencing-phase final argument. The prosecutor concluded: "I submit to you ladies and gentlemen—I am just going to say this in conclusion—the only appropriate punishment for the brutal killing of Sheriff Neil Grantham is death by electrocution." Record on Appeal, Exhibit A, Vol. II, pp. 347–48. Magwood contends that this statement diminished the jury's sense of responsibility for imposing the death sentence. *See Caldwell v. Mississippi,* — U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

Magwood did not object to this statement at the trial or challenge it in subsequent state proceedings. This procedural default in state court precludes review of this issue in federal court. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Since Magwood has not overcome this bar by showing cause and actual prejudice, we need not reach the merits of this issue. In so holding, we do not imply that the prosecutor's comment might otherwise constitute reversible error.

## II. *The State of Alabama's Cross-Appeal*

The grant of the writ of habeas corpus was predicated on the district court's finding that the trial court erred in rejecting two proposed mitigating circumstances. The two factors at issue are:

(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; ·

. . . . .

(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

Ala.Code § 13–11–7.

The state trial court specifically considered and rejected these factors.[15] In its final order, the court stated that "Magwood did not kill Grantham under influence of extreme [mental] or emotional disturbance and when the three bullets were fired into the body of Grantham, Magwood had the capacity to appreciate the criminality of his act. Magwood's conduct was contrived, calculated and previously designed with the capacity to conform his conduct to the requirements of law." Record on Appeal, Exhibit A, Vol. II, pp. 370–71. The Alabama Supreme Court sustained this finding as a correct application of the Alabama death penalty statute. *See Ex parte Magwood,* 426 So.2d at 932.

The district court characterized this finding as a factual determination and reviewed it pursuant to the criteria set out in 28 U.S.C. § 2254(d). That statute creates a general presumption of correctness in federal habeas corpus proceedings for factual findings by an appropriate state court. *See Sumner v. Mata,* 449 U.S. 539, 101

---

**15.** The trial court instructed the jury that "[a] mitigating circumstance need only be proven to your reasonable satisfaction and not beyond a reasonable doubt." Record on Appeal, Exhibit A, Vol. II, p. 354. The Alabama Supreme Court subsequently ruled that the defendant bears the burden of proof on this point under the death penalty statute at issue in this case. *See Ex parte Cochran,* No. 83–1044, slip op. at 13–14 (Ala. Nov. 8, 1985).

S.Ct. 764, 66 L.Ed.2d 722 (1981). This presumption, however, does not apply if the district court determines that the state court's factual finding "is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). The district court held that the rejection of the two mental condition mitigating factors was not fairly supported by the record.

After conducting a thorough review of the expert psychiatric testimony, *Magwood v. Smith,* 608 F.Supp. at 226–27, the court concluded that "the evidence of the existence of the mitigating factors relating to Magwood's mental state is so overwhelming as to make the trial court's rejection of their existence clearly erroneous." *Id.* at 226.

The district court recognized that ordinarily "it is for state courts to determine whether the death sentence is appropriate for defendants in state trials after a careful weighing of aggravating and mitigating circumstances." *Id.* at 228. The court, however, felt compelled to intervene because of the perceived gravity of the state court's error:

> If courts can find on the evidence in this case that Magwood was not so mentally impaired, then the requirements of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), which upheld the imposition of the death sentence where there were standards and the sentence of death was not arbitrarily or capriciously imposed become only parts of a litany without practical meaning. To find that mitigating circumstances do not exist where such mitigating circumstances clearly exist returns us to the state of affairs which were found by the Supreme Court in *Furman v. Georgia* to be prohibited by the Constitution.

*Magwood v. Smith,* 608 F.Supp. at 228. Consequently, the district court granted a conditional writ of habeas corpus and "remanded" the case to the state trial court for another sentencing hearing.

The State of Alabama cross-appeals this order, urging that the district court employed an incorrect standard of review. The State claims that under governing precedent, a federal court may not review the factual findings resulting from a properly conducted state court capital sentencing hearing. The State cites two cases to support its position, *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) and *Palmes v. Wainwright,* 725 F.2d 1511 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

In *Ford,* the petitioning death row inmate complained that "the Florida Supreme Court, in reviewing the evidence of aggravating and mitigating circumstances, violated the Eighth Amendment by failing to apply in his case the same standard of review applied in other capital cases." 696 F.2d at 819. This court rejected that argument:

> Where in a capital punishment case the state courts have acted through a properly drawn statute with appropriate standards to guide discretion, ... federal courts will not undertake a case-by-case comparison of the facts in a given case with the decisions of the state supreme court.... This rule stands even though were we to retry the aggravating and mitigating circumstances in these cases, 'we may at times reach results different from these reached in the Florida state courts.'

*Id.*

In *Palmes,* the petitioner contended that the sentencing court failed to consider evidence in support of a non-statutory mitigating factor. The evidence was admitted at trial, but was not mentioned in the trial court's written order. Again, this court disagreed, stating:

> The weight the trial judge gave to any one factor was wholly within her discretion. ... Our review is completed once it is established that a full hearing was

conducted in which appellant's counsel was given an opportunity to present all of the mitigation evidence. There is no indication whatsoever that the trial judge did not conscientiously consider everything presented.

725 F.2d at 1523.

■ These two cases articulate the rule that a federal habeas corpus court will not re-evaluate the *weight* accorded to particular aggravating and mitigating factors. This determination is left to state courts, provided the death-penalty statute and sentencing hearing meet relevant constitutional requirements. *See also Johnson v. Wainwright*, 778 F.2d 623, 631–32 (11th Cir.1985); *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983) (per curiam), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). These cases do not preclude federal review of the fact-finding that determines the *existence* of a particular aggravating or mitigating circumstance. This is a separate inquiry and one that can proceed within the parameters set forth in 28 U.S.C. § 2254(d).

We are aware of the court's statement in *Ford* that "we have not found any habeas corpus decision in which this Court has reversed a death sentence due to the state court's incorrect decision as to the existence or absence of aggravating and mitigating circumstances." 696 F.2d at 819. Although that statement establishes that this circuit has not yet found it necessary to reject a factual finding from a state court capital sentencing hearing, it in no way precludes such a result. In fact, following this statement the *Ford* court went on to apply 28 U.S.C. § 2254(d) and uphold the factual findings of the Florida courts. *Id.*

A third case from this circuit supplies additional authority for federal review of factual findings relating to mitigating circumstances. In *Goode v. Wainwright*, 704 F.2d 593 (11th Cir.), *rev'd on other grounds*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (per curiam), this court noted the distinction between review of the weight given to a mitigating circumstance

and review under § 2254(d) of factual findings as to the existence of that circumstance. 704 F.2d at 603 & n. 11.

■ Having established that a federal habeas corpus court may review a state court factual finding concerning the existence of mitigating circumstances, we now turn to the decision of the district court in this particular case. Our review of the district court decision is plenary since that court did not conduct an evidentiary hearing. *Abdi v. Georgia*, 744 F.2d 1500, 1503 n. 5 (11th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985).

■ In order to satisfy the requirements of the eighth and fourteenth amendments, a capital sentencing scheme must provide the sentencing authority with appropriate standards "that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." *Proffitt v. Florida*, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 926 (1976). After reviewing the psychiatric evidence that was before the state court, we must conclude that the state court's rejection of the two mental condition mitigating factors is not fairly supported by the record and that, as such, Magwood was sentenced to death without proper attention to the capital sentencing standards required by the Constitution. The three members of the court-appointed lunacy commission reported on August 16, 1979, that Magwood was presently insane and probably was insane on the date of Sheriff Grantham's murder. As a result of this report, Magwood was committed to Searcy Hospital for an eight-month course of treatment that required the use of powerful antipsychotic drugs. Dr. Rudder expanded upon the commission's findings in his deposition and repeated his conclusion that Magwood was insane on March 1, 1979. Dr. McKeown, a court-appointed psychologist, concluded that Magwood was not insane on March 1, but that he suffered from paranoid schizophrenia on that date. Dr. Cooper and Dr. Crook both believed that Magwood was not insane at the time of their June 6, 1979, examination, but nei-

ther physician expressed an opinion about Magwood's state of mind on the day of the crime. Thus, four experts ascertained that Magwood suffered from some form of serious mental disorder on the date of Sheriff Grantham's murder and none testified that Magwood was free from mental illness on that date.

We find this evidence is more than sufficient to overcome the presumption of correctness accorded the state court's findings by 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The record clearly demonstrates that Magwood killed Sheriff Grantham "under the influence of extreme mental or emotional disturbance," Ala.Code § 13–11–7(2), and that on March 1, 1979, Magwood's capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired," Ala.Code § 13–11–7(6). Consequently, Magwood is entitled to a new sentencing hearing in order to satisfy the constitutional standards for sentencing in death penalty cases. In making this judgment, we do not imply or suggest that the state trial court may not sentence Magwood to death after weighing the four mitigating factors against the aggravating circumstances. That is a matter for the Alabama courts and may not be second-guessed by a federal court. *Ford v. Strickland,* 696 F.2d 804, 819 (11th Cir.) (en banc), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).

As a final matter, we address the district court's "remand" of this case to the state trial court. The State of Alabama correctly notes that a federal district court or court of appeals has no appellate jurisdiction over a state criminal case and hence has no authority to "remand" a case to the state courts. The federal habeas corpus statute provides a mechanism for collateral, not appellate review. A federal court, however, is authorized to grant a conditional writ of habeas corpus. The district court's order was in effect a conditional writ and we will treat it as such.

In summary, we find no constitutional error in the guilt phase of Magwood's trial or in any post-sentencing proceedings. We do find that Magwood's death sentence was imposed without due regard to the standards required by the eighth and fourteenth amendments.

The judgment of the district court is AFFIRMED.

CLARK, Circuit Judge, concurring:

Although concurring in the opinion, I wish to note that there is a serious question about the constitutionality of Ala.Code § 15–16–23 in light of the Supreme Court's acceptance of the issue in *Ford v. Wainwright* (in which I dissented), 752 F.2d 526 (11th Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 566, 88 L.Ed.2d 552 (1985). The Alabama statute provides the prisoner no due process rights with which to pursue his claim of insanity. Since this issue will be resolved shortly, I thought it appropriate to call this to the attention of the district court and the parties.