United States Court of Appeals,

Eleventh Circuit.

No. 94-5029.

Dean DELGUIDICE, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Respondent-Appellee.

May 24, 1996.

Appeal from the United States District Court for the Southern
District of Florida. (No. 90-6558-CIV-JCP), James C. Paine, Judge.

Before ANDERSON and BARKETT, Circuit Judges, and YOUNG[*], Senior
District Judge.

PER CURIAM:

Dean Delguidice, a Florida prison inmate convicted in 1988 of
attempted manslaughter and two counts of battery, appeals the
district court's judgment denying his petition for writ of habeas
corpus brought pursuant to 28 U.S.C.A. § 2254. Delguidice argues
that the state trial court erred in admitting the testimony of a
psychologist because his counsel was not sufficiently notified in
advance of the scope and nature of the examination giving rise to
the psychologist's testimony. We reverse and remand.

## I. FACTS

The issues in this appeal involve two overlapping criminal
prosecutions of Delguidice. The charges in this case (hereinafter
"the instant case") arose on May 8, 1987, when Delguidice attacked
a department store security guard.[1] The information charging

_____

[*]Honorable George C. Young, Senior U.S. District Judge for
the Middle District of Florida, sitting by designation.

[1]A second person was struck during the course of this melee,
which resulted in the jury finding Delguidice guilty as to the

Delguidice in the instant case was filed June 1, 1987; counsel for Delguidice filed a notice of reliance on the insanity defense on July 23, 1987.

Thereafter, in September 1987, Delguidice was tried and convicted in an unrelated criminal case (hereinafter "the second case"). Delguidice was represented by different counsel in the second case. At the request of Delguidice's father, on November 30, 1987, a clinical psychologist, Dr. Ceros-Livingston, was appointed to determine Delguidice's competency to be sentenced in the second case. It is undisputed that Delguidice's attorney in the second case had notice of the court's order for the examination by Dr. Ceros-Livingston.[2] On December 5, 1987, when Dr. Ceros-Livingston conducted the examination pursuant to the court's order in the second case, she was under the misapprehension that she was to evaluate Delguidice with respect to both pending cases.[3] She prepared a report of her findings accordingly. Delguidice's counsel in the instant case was not notified in advance of the

second count of battery.

[2]Delguidice's counsel in the second case received notice of the examination in open court when the trial judge directed that Delguidice undergo a competency exam for sentencing.

[3]Specifically, Dr. Ceros-Livingston was sent documents which led her to believe she was to examine Delguidice as to both cases. She was sent a notice to examine Delguidice as to his competency (for sentencing purposes in the second case). For some unknown reason, she was also sent a probable cause affidavit and booking sheet which indicated that she was to examine Delguidice as to the instant case. Consequently, she examined Delguidice both as to his competency to be sentenced in the second case and as to his sanity at the time of the offense giving rise to the instant case.

examination.[4]

At trial in the instant case, Delguidice interposed an insanity defense. Dr. Arnold Stillman testified for the defense in support of Delguidice's insanity theory. He testified that Delguidice suffered from "organic brain syndrome," which resulted in episodic attacks of violence over which Delguidice had no control. Dr. Stillman concluded that Delguidice was insane at the time of the offense and that he thought he was acting in self-defense.

The trial court in the instant case, over counsel's objection, allowed Dr. Ceros-Livingston to testify in rebuttal of Delguidice's insanity defense. She testified that although Delguidice believed he was defending himself at the time of the assault in the instant case, he was legally sane at that time. In Dr. Ceros-Livingston's opinion, Delguidice knew right from wrong and understood the consequences of his actions at the time of the instant offense. Dr. Ceros-Livingston was the only witness who testified in opposition to Delguidice's insanity defense.

As noted, Delguidice was convicted and the trial court entered judgment against him. The Florida Fourth District Court of Appeal affirmed his conviction (rejecting the Sixth Amendment challenge at issue here).[5] Delguidice's petition for writ of habeas corpus in the District Court for the Southern District of Florida, which

---

[4]It is clear, however, that Delguidice's counsel in the instant case had a copy of the doctor's report well before the trial.

[5]The District Court of Appeal did, however, order that Appellant's sentence as a habitual offender be reversed. *Delguidice v. State,* 554 So.2d 35 (Fla.App. 4 Dist.1990).

raised his Sixth Amendment constitutional challenge, was denied. This appeal ensued.

## II. DISCUSSION

Delguidice asserts that the district court erred in denying his habeas corpus petition, i.e., it erred in concluding that the admission of Dr. Ceros-Livingston's testimony at trial did not violate Delguidice's Sixth Amendment right to consultation with counsel. Delguidice contends that, pursuant to *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and its progeny, when counsel is not properly notified of a psychiatric evaluation, use of the results of that evaluation violates the defendant's Sixth Amendment right to consultation with counsel.

A criminal defendant has a Sixth Amendment right to assistance of counsel before submitting to a pretrial psychological examination that represents a "critical stage" of that defendant's prosecution. *Smith, id.* at 468-70, 101 S.Ct. at 1876. *See also Godfrey v. Kemp,* 836 F.2d 1557, 1563-64 (11th Cir.), *cert. denied,* 487 U.S. 1264, 109 S.Ct. 27, 101 L.Ed.2d 977 (1988).[6] In *Smith,* the Court held that once a defendant is formally charged, his Sixth Amendment right to counsel precludes such an examination without first notifying counsel as to its scope and nature. *Smith,* 451 U.S. at 470-71, 101 S.Ct. at 1877; *Powell v. Texas,* 492 U.S. 680, 681-83, 109 S.Ct. 3146, 3148, 106 L.Ed.2d 551 (1989).

In *Smith,* the sentencing jury evaluated the defendant's future dangerousness in deciding whether to impose the death penalty.

---

[6]There has been no argument that the examination at issue here was not a "critical stage." Thus, the State effectively concedes this point.

*Smith,* 451 U.S. at 456-58, 101 S.Ct. at 1870. The defendant had been interviewed by a psychiatrist to determine whether he was competent to stand trial. *Id.* At the sentencing hearing, however, the psychiatrist testified that the defendant constituted a continuing threat to society. *Id.* at 458-60, 101 S.Ct. at 1871. The defendant's counsel were not aware in advance that the examination would include an inquiry into defendant's future dangerousness, and the Court concluded that the defendant had not received the opportunity to discuss with his counsel the examination or its scope. *Id.* at 468-71, 101 S.Ct. at 1876-77. The Court employed the following rationale for its conclusion that the defendant's Sixth Amendment rights had been violated:

> It is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.

*Id.* at 468-70, 101 S.Ct. at 1876 (quotation omitted); *see also United States v. A.R.,* 38 F.3d 699, 704 (3d Cir.1994).

In sum, the Sixth Amendment right to counsel requires that counsel be given *advance* notice of the scope and nature of a psychological examination so that counsel can discuss with the client the advisability of undergoing the examination and give other appropriate advice. *Buchanan v. Kentucky,* 483 U.S. 402, 424-25, 107 S.Ct. 2906, 2918-19, 97 L.Ed.2d 336 (1987); *Smith,* 451 U.S. at 469-71, 101 S.Ct. at 1876-77. It is clear that Delguidice's counsel in the instant case had no advance notice of

the psychological examination by Dr. Ceros-Livingston.[7]

The State's only argument is that the examination was initiated at the request of Delguidice's father, that Delguidice was represented by counsel (albeit different counsel) in the second case at the time the Court ordered the competency examination, and that this counsel knew about the examination. Thus, the State argues that Delguidice is not entitled to relief.

The State's position is essentially that notice need not have been given to counsel in the instant case because Delguidice was represented in the second case and that counsel was notified that an examination would take place. The problem with the State's argument is its failure to focus on whether counsel in the second case was notified as to the *scope* of the examination.[8] Although Delguidice's counsel in the second case was aware in advance that Delguidice was to be examined as to his competency for sentencing, he had no advance notice at all that Dr. Ceros-Livingston was also going to examine Delguidice on the separate issue of Delguidice's

---

[7]The State notes that counsel for Delguidice in the instant case knew about the examination before trial and, accordingly, had sufficient time to prepare an effective cross examination. The Supreme Court cases explaining the contours of *Smith,* however, make clear that the purpose of the notification requirement is to afford counsel the opportunity to consult with the client prior to the examination. *See Smith,* 451 U.S. at 469-71, 101 S.Ct. at 1876-77. Nothing in *Smith* or its progeny suggests that notification after the examination but prior to trial satisfies the Sixth Amendment concerns espoused in those cases; indeed, such notification forces a defendant to "stand alone against the state" at precisely a time the Supreme Court has held he need not.

[8]Because we find that the notice given was constitutionally inadequate, we need not decide whether Delguidice's Sixth Amendment rights in the instant case could have been satisfied by adequate notice to counsel in the second case.

sanity. The record reveals that at a hearing in open court before sentencing in the second case, Delguidice's father requested that Delguidice be examined for competency with respect to sentencing. Delguidice's counsel in the second case was present. The trial court agreed and ordered the same. However, the documents which were sent to Dr. Ceros-Livingston by Court Projects included the booking sheet and probable cause affidavit relating to the instant case. These documents led Dr. Ceros-Livingston to believe that she was expected to examine Delguidice not only for competency for sentencing in the second case, but also for possible insanity at the time of the crime at issue in the instant case. There is no evidence in the record suggesting that counsel for Delguidice in the second case had any advance notice that the examination by Dr. Ceros-Livingston would exceed the scope contemplated, i.e., competency in the second case.[9]

The Supreme Court case law is clear that, under the Sixth Amendment, counsel must have advance notice not only of the fact of an examination but also of the scope of the examination. Indeed, that was the precise matter at issue in *Smith.* There, it was possible that defense counsel did have advance notice of an examination relating to competency to stand trial, but was not

---

[9]These facts are easily distinguishable from *Magwood v. Smith,* 791 F.2d 1438 (11th Cir.1986). In *Magwood,* two physicians were appointed at the request of defense counsel to determine defendant's competency to stand trial. Later, these physicians testified at trial to rebut defendant's insanity defense. *Id.* at 1441. Unlike the instant case, however, the physicians limited their testimony at trial to only defendant's competency to stand trial; neither expressed an opinion as to defendant's sanity at the time of the offense. *Id.* at 1442. The court expressly noted that this differed from the situation in *Smith, supra. Magwood,* 791 F.2d at 1442.

notified in advance that the examination would encompass the issue of future dangerousness.

> Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness.[fn15]

> [fn15] It is not clear that defense counsel were even informed prior to the examination that Dr. Grigson had been appointed by the trial judge to determine respondent's competency to stand trial.

451 U.S. at 471 and n. 15, 101 S.Ct. at 1877 and n. 15. Accordingly, the Court held that by exceeding the scope of the noticed examination, the defendant's Sixth Amendment right to counsel had been violated: "Respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Id.* at 470-71, 101 S.Ct. at 1877. *See also Vanderbilt v. Collins,* 994 F.2d 189, 198 (5th Cir.1993) (holding that Sixth Amendment violated when examination encompassed more than its intended scope).

Similarly, in *Buchanan,* the Court indicated that defense counsel must be given advance notice "about the scope and nature" of the examination to enable counsel to consult with client. 483 U.S. at 424, 107 S.Ct. at 2919. The Court in *Buchanan* emphasized that the nature of the Sixth Amendment right at issue is the consultation with counsel, not the uses to which the psychological examination is later put. *Id.* at 422-26, 107 S.Ct. at 2918-19. "Such consultation, to be effective, must be based on counsel's being informed about the scope and nature of the proceeding."[10] *Id.*

---

[10]The Court went on to conclude that Buchanan's Sixth Amendment rights had not been violated because his counsel had

at 424, 107 S.Ct. at 2919.

Because no counsel for Delguidice had advance notice that the scope of the examination would include Delguidice's possible insanity, we conclude that Delguidice's Sixth Amendment rights were violated.[11]

Our conclusion that the trial court erred in admitting the testimony of Dr. Ceros-Livingston in violation of Delguidice's Sixth Amendment rights does not end our inquiry. We must also decide whether the error was harmless. *Satterwhite v. Texas,* 486 U.S. 249, 255-59, 108 S.Ct. 1792, 1797-98, 100 L.Ed.2d 284 (1988) (adopting harmless error rule). The Court recently set forth a new harmless error standard for habeas review of trial type errors. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1722,

---

been notified about both the examination and the scope of the examination. *Id.* at 424-26, 107 S.Ct. at 2919. The problem in *Buchanan* was that the state used the results of this examination (an examination about which counsel was fully informed) in a way not anticipated by counsel. *Id.* at 422-24, 107 S.Ct. at 2918 ("Petitioner attempts to bring his case within the scope of *Smith* by arguing that, although he agreed to the examination, he had no idea, because counsel could not anticipate, that it might be used to undermine his "mental status' defense."). The Court thus noted that although the effectiveness of counsel's consultation depended, in part, on an awareness of the uses to which the examination could be put, counsel should have been able to anticipate these uses. By contrast, in this case, Delguidice's counsel in the second case was not informed about the scope and nature of the examination; thus, he was denied the opportunity to use his expertise to anticipate potential uses because the State failed to discharge its obligation to give him advance notice of the scope of the examination.

[11]The State does not argue that Delguidice's claim is barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and we decline to raise the issue *sua sponte. See Collins v. Youngblood,* 497 U.S. 37, 40-41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) (holding that the *Teague* rule is not "jurisdictional" in the sense that the court must raise and decide the issue *sua sponte* ).

123 L.Ed.2d 353 (1993). "The test ... is whether the error "had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* (quoting *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1993)). We follow the Fifth Circuit in applying the *Brecht* standard to *Smith* errors. *See Vanderbilt v. Collins,* 994 F.2d 189, 198-99 (5th Cir.1993). *Cf. Horsley v. Alabama,* 45 F.3d 1486, 1492 n. 11 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 410, 133 L.Ed.2d 328 (1995) ("We think the Supreme Court's rationale (advancing comity, federalism, finality, and the importance of the trial) for the *Brecht* rule reaches almost all federal habeas cases....").

After careful review of the record, we conclude that the error was not harmless. Dr. Ceros-Livingston's testimony was the State's only rebuttal of Delguidice's insanity defense, which was supported by the testimony of Dr. Stillman and by a lay witness who testified that Delguidice looked enraged ("not normal") during the commission of the instant offense. In light of the evidence supporting Delguidice's insanity defense, and in the absence of other evidence rebutting Delguidice's insanity defense, we conclude that the admission of Dr. Ceros-Livingston's testimony had a substantial and injurious effect or influence in determining the jury's verdict.

### III. CONCLUSION

Accordingly, the judgment of the district court is reversed, and the case is remanded to the district court with instructions that the writ of habeas corpus, appropriately conditioned, should be granted.

REVERSED and REMANDED.